UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
  **JUDGE**

<u>**LETTER OPINION**</u>

September 25, 2009

James Langton
Langton & Alter, Esqs.
2096 St. Georges Avenue
Rahway, NJ 07065
 *(Attorney for Plaintiff)*

Vernon Norwood
Social Security Administration
26 Federal Plaza
Room 3904
New York, New York 10278
 *(Attorney for Defendant)*

  RE: <u>Billingsley v. Commissioner of Social Security</u>
    <u>Civ. No. 08-1912 (WJM)</u>

Dear Counsel:

  Plaintiff Michael Billingsley ("Billingsley") brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying Billingsley's application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). There was no oral argument. Fed. R. Civ. P. 78. For the following reasons, the Commisioner's decision is **REVERSED AND REMANDED** for further consideration.

**BACKGROUND AND PROCEDURAL HISTORY**

  Plaintiff is a 41 year old male who suffers from morbid obesity and related

1

ailments including chronic obstructive pulmonary disease ("COPD") and hypertension. (R. 15-16, 100, 115.)  He maintains that he has been obese his entire life, weighing 325 pounds in high school, over 500 pounds at the time of his application for benefits, and over 600 pounds at present.  (R. 50, 117, 120-121.) Plaintiff is approximately five feet, eleven inches tall.  (R. 50.)  Although he worked briefly in the late 1980s and early 1990s as a maintenance worker, a box packer, and a cab driver, he has not had any employment in nearly fifteen years.  (R. 46, 116-118.)  He states that he was fired from these jobs or left voluntarily because they were too physically exhausting and because he cannot sit or stand for prolonged periods.  (R. 122)

Plaintiff lives with his mother and sister.  (R. 120.)  On a typical day, he is able to take care of his personal hygiene and grooming needs, ready his nephew for school, watch television, prepare simple meals, and perform light housework.  (R. 60, 127.)  His mental capacity is normal and he has a 10th grade education, but he says that his size and weight prevent him from working.  (R. 50-51, 54.)  Due to his weight, Plaintiff says that he cannot walk, stand, or sit upright for more than 20 minutes at a time.  (R. 51.)  He suffers from general discomfort, shortness of breath, and fatigue, and loses circulation in his legs and sweats profusely if he sits down for too long.  (R. 64.)  He finds that the only way to alleviate this discomfort is to lie flat on his stomach, which he does for much of the day.  (R. 119.) Plaintiff does not often leave his house.  (R. 70.)

Plaintiff applied for SSI and DIB benefits on September 30, 2004, alleging disability due to obesity.  Plaintiff's applications were denied initially on January 5, 2005, and upon reconsideration on March 23, 2005.

After a hearing before Administrative Law Judge Michal Lissek ("ALJ"), the ALJ issued a decision on October 30, 2007.  In the decision, the ALJ denied Billingsley's application for benefits.  Applying the Commissioner's five-step analysis for determining eligibility for DIB and SSI, the ALJ first found that Plaintiff was not engaged in substantial gainful activity from the time of the alleged onset of his impairments. (R. 15.)  At step two, the ALJ determined that Plaintiff's impairments, including obesity, hypertension, and COPD, were severe.  *Id*.  However, at step 3, the ALJ found that these impairments, either alone or in combination, did not meet or equal any of the impairments listed in 20 C.F.R. § 404, Subpart P, App. 1.  *Id*.  Therefore, the ALJ continued to step 4 and concluded that Plaintiff had no past, relevant work but that he had the Residual Functional Capacity ("RFC") to perform a full range of unskilled sedentary work.  (R. 16.)  This includes lifting up to 10 pounds at a time, lifting/ carrying very light objects such as ledgers, docket files, and small tools occasionally, standing/ walking (with normal breaks) for about two hours out of an eight hour workday, and sitting (with normal breaks) for about six hours out of an eight hour workday.  *Id*.  Finally, at Step 5, the ALJ considered Plaintiff's single, non-exertional work limitation, which was a limitation on climbing ropes, ladders, and stairs, and was determined in advance by a consultative physician for the Social Security Administration.  (R. 19.)  The ALJ also took into

2

account his age, education, and work experience, and then consulted the framework contained within the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Guidelines"). *Id.* The Guidelines indicated that based upon all these factors, there are jobs that exist in significant numbers in the national economy that the claimant could perform. Therefore, the Guidelines directed the ALJ to find that Plaintiff was not disabled. (R. 20.) The ALJ made this decision without consulting a vocational expert. *Id.*

The Appeals council affirmed this decision on February 22, 2008. Plaintiff appeals the Commissioner's ruling and argues that the ALJ's decision was not supported by substantial evidence. Specifically, he alleges that the ALJ erred in (1) finding that his impairments did not meet or equal a listing in the C.F.R.; (2) finding that his RFC allowed him to perform a full range of sedentary job activities; and (3) determining that there were jobs he could perform in the national economy, without consulting a vocational expert. (Pl.'s Br. 20, 28, 37, 42).

## STANDARD OF REVIEW

The district court reviews the ALJ's application of the law *de novo*. *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1191 (3d Cir. 1986). On the other hand, factual findings are reviewed to determine whether they are supported by substantial evidence. *See Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). When substantial evidence upon which the ALJ can base his factual findings exists, this Court is bound by those determinations of the ALJ. *See id.* (citing 42 U.S. § 405(g)). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (quoting *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Srvcs.*, 48 F.3d 114, 117 (3d Cir. 1995)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Under the substantial evidence standard, the district court is required to review the record as a whole. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). If there is more than one rational interpretation of the evidence in the record, this Court must accept the conclusions of the ALJ and affirm his decision. *See Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006). The Court is "not permitted to weigh the evidence or substitute [its] own conclusions for that of the fact-finder." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Overall, the substantial evidence standard is a deferential standard of review, which requires deference to inferences drawn by the ALJ from the facts, if they are supported by substantial evidence. *Schaudeck*, 181 F.3d at 431.

## DISCUSSION

**I.     The ALJ's determination that Billingsley's condition did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P,**

3

**Appendix 1, is supported by substantial evidence**.

Plaintiff's first challenge to the ALJ's decision is with respect to her step 3 finding that Billingsley's obesity did not meet or medically equal one of the listed impairments in the C.F.R., which would have resulted in a presumption of disability. (R. 15.) However, the Court finds that the ALJ's determination was supported by substantial evidence.

Step 3 requires that the ALJ determine if any of the claimant's conditions meet or equal any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 that give rise to a presumption of disability. In addition to arriving at a conclusion, the ALJ must also provide her reasoning, so that the district court can conduct meaningful judicial review. *See Burnett v. Comm'r of Social Security*, 220 F.3d 112 (3d Cir. 2000)

Here, the ALJ began by noting that there is no specific listing for obesity. (R. 15.) She also observed that obesity can affect other body systems such as the musculoskeletal, respiratory, and cardiovascular systems. (*Id.*) Therefore, she went on to consider whether any of Plaintiff's obesity-related ailments equaled or rose to the level of a C.F.R. listing. However, as she noted, Plaintiff's medical records show no signs of any musculoskeletal problems; while Plaintiff does suffer from COPD, which is a respiratory disease, the results of his pulmonary function study shows that his specific condition is far less severe than the level required to meet the COPD C.F.R.listing; and any cardiovascular abnormalities also fell short of the listing requirements. (R. 15-16.) Because the ALJ relied on Plaintiff's medical records, considered but rejected possible listing equivalencies, and laid out the basis for her reasoning, her finding is supported by substantial evidence.

II.  **The ALJ's determination of Billingsley's RFC is supported by substantial evidence.**

Plaintiff next argues that the ALJ erred in finding that he is able to perform a full range of sedentary work. (R. 16.) The Court disagrees and finds that there is substantial evidence to support the ALJ's determination.

RFC is an administrative assessment of the upper limit of work a claimant is able to perform given the limitations imposed by his impairments. 20 C.F.R. §§ 404.1545 and 416.945. This determination is an issue generally reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2). In making a residual functional capacity determination, the ALJ must consider all the evidence before her. *See Burnett*, 220 F.3d at 121. Although the ALJ may weigh the credibility of the evidence, she must give some indication of the evidence that she rejects and her reasons for discounting such evidence. *Id*.

Substantial evidence supports the ALJ's finding that Plaintiff can perform the full range of sedentary work. The ALJ properly took into account both the symptoms alleged by Plaintiff as well as the extent to which they are consistent with the objective medical evidence. In her decision, she noted Plaintiff's extreme weight and the effects of his obesity on his daily life, including his difficulties walking, standing, sitting, and finding

4

adequate chairs to support his body.  (R. 17.) However, she also observed that Plaintiff's medical records do not fully support the severity of his condition as he portrays it, given that his blood pressure is under control with medical treatment, he performed satisfactorily in the pulmonary function study and on an EKG, the consultative physician observed that Plaintiff had a normal gait, could walk on his heels and toes without difficulty, squatted fully, had a normal stance, did not need help changing for the examination or getting on or off the examination table, and did not appear to be in acute distress, and the ALJ herself did not observe any external signs of functional difficulty to the degree alleged. (*Id.*)  Thus, the ALJ took into account both Plaintiff's representations and the medical evidence, and she chose to give greater weight to the medical evidence.

It is well-established that an ALJ may determine the extent to which the claimant is accurately stating the degree of pain or the extent to which she is disabled by it.  *See Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529(c)). The ALJ must consider all evidence in the record, and "may weigh the credibility of the evidence,...giv[ing] some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000).  The ALJ followed these steps, indicating which pieces of evidence she accepted, which she discounted, and why.  Thus, the ALJ's determination of Plaintiff's RFC was both proper and supported by substantial evidence.

Plaintiff makes much of the fact that there is evidence in the record to show that he is not able to perform these duties.  Whether or not this is true, this position misconstrues the judicial review function of the district court.  At this stage, the relevant inquiry is not whether there is evidence to support Plaintiff's version of the facts and a finding of disability, but whether there is substantial evidence to support the ALJ's finding of no disability.  In fact, even if the reviewing court would have come out differently, the ALJ's factual determinations must stand, as long as they are supported by substantial evidence. *See Hartranft v. Apfel*, 181 F.3d at 358; *see also Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006).

**III.   The ALJ's determination that there are jobs in substantial numbers in the national economy which Plaintiff could perform, made in reliance upon the Medical-Vocational Guidelines and without consulting a vocational expert error or giving Plaintiff advance notice, was reversible error.**

Finally, Plaintiff challenges the ALJ's determination that there exist jobs in substantial numbers in the national economy that Plaintiff could perform.  (R. 19). Specifically, Plaintiff alleges that at this stage, the ALJ was required either to consult with a vocational expert or to provide Plaintiff with advance notice that she would not be consulting with a vocational witness, so that Plaintiff could prepare and call his own witness if he saw fit. (Pl.'s Br. at 42.)  Because the ALJ did neither and relied exclusively on Medical-Vocation Guidelines (the "Guidelines") which are a Social Security Ruling

("SSR") contained within the C.F.R., Plaintiff alleges that her finding was in error. (*Id.*) The Court agrees with Plaintiff. Because this involves a question of law, and not one of fact, the Court reviews this issue de novo.

The Social Security regulations state that the limitations imposed upon a claimant by his impairments may be exertional, non-exertional, or a combination of the two. 20 C.F.R. § 404.1569a. Exertional limitations relate to the strength demand of jobs, and any other type of limitation is classified as non-exertional. *Id*. When a claimant's limitations are purely exertional, an ALJ may rely solely on the Guidelines to determine whether there exist jobs in significant numbers in the national economy that the claimant could perform. However, the law is equally clear that when a claimant has even one non-exertional limitation, a vocational expert must be consulted or the claimant must be given the opportunity to provide his own witness. *See Poulos v. Comm'r of Social Security*, 474 F.3d 88, 93-94; *see also Sykes v. Apfel*, 228 F.3d 259, 261 (3d. Cir. 2000) . This is true even where the ALJ has concluded that the claimant's non-exertional limitation is not significant or will not substantially diminish the occupational base, because the ALJ is not in the position to make such a determination about the import of a non-exertional limitation. *See Poulos*, 474 F.3d at 94 (finding that in the case of a Social Security claimant with both exertional and non-exertional limitations, it was reversible error for an ALJ to rely on the Guidelines without reference to vocational evidence); *see also Sykes*, 228 F.3d at 266 (finding that the Commissioner cannot on his own determine whether or not a claimant's non-exertional limitations will have an impact on his occupational base).

Here, in addition to Plaintiff's exertional limitations, the Social Security physician determined that Billingsley has a non-exertional limitation on climbing. (R. 90.) Therefore, the ALJ was required to consult a vocational expert to determine the availability of jobs in the national economy that Plaintiff could perform, or in the alternative, give him advance notice that she did not plan to call a vocational expert so that he could plan accordingly or call his own. The ALJ did neither. (R. 20.) Her decision noted that she chose not to consult a vocational witness because Plaintiff's only non-exertional limitation was for climbing. (*Id.*) In her opinion, a limitation on climbing would not significantly erode the occupational base for sedentary work because, also in her opinion, most sedentary jobs do not involve climbing. (*Id.*) However, as the *Sykes* court made clear, an ALJ cannot substitute her own judgment for that of a vocational expert and is not in a position to determine the impact of climbing limitation on the availability of sedentary jobs. Moreover, it should also be noted that a limitation on climbing refers to not just ropes but also ladders and stairs, and that even positions designated as sedentary may require individuals to move about as much as 1/3 of the time. Therefore, it was reversible error for the ALJ to rely solely on the Guidelines without calling a vocational expert or giving Plaintiff advance notice so he could call his own.

Defendant notes in his opposition to Plaintiff's brief the existence of two SSRs that would suggest an exception to the *Poulos* ruling in this situation. *See* SSR 83-14

("where a person has some limitation in climbing and balancing and it is the only [non-exertional] limitation, it would not *ordinarily* have a significant impact on the broad world of work") (emphasis added); *see also* SSR 83-14 (where it is *clear* that a non-exertional limitation has very little effect on the exertional occupational base, then reference to guidelines for decision making is appropriate) (emphasis added). (Deft.'s Br. at 16). Defendant argues that these rulings indicate that the ALJ was correct to discount Plaintiff's non-exertional limitation and rely solely on the guidelines. However, the very language of SSR 83-14 itself indicates that the ruling applies only to ordinary situations. Given the severity of Plaintiff's condition (at approximately 600 pounds, his Body Mass Index is almost three times the threshold for obesity), it cannot be said that this is an ordinary case. Moreover, the language of the second SSR indicates that it is only to be followed when it is clear that a limitation is insignificant; again, given the extreme nature of Plaintiff's obesity, it is not at all clear in this situation how the limitation will affect him or his job prospects. Therefore, this court finds that it was error for the ALJ to rely on the Guidelines without calling a vocational expert or providing advance notice to Plaintiff.[1]

## CONCLUSION

For the reasons stated above, the ALJ's final decision of no disability is **REVERSED** and **REMANDED** for further consideration below.

/s/ William J. Martini
William J. Martini, U.S.D.J.

---

[1] Note that the ALJ, in her decision, states that the *Poulos* case should not apply because Plaintiff's case more closely parallels *Allen v. Barnhart,* 417 F.3d 396 (3d Cir. 2005). (R. 20). However, the holdings of *Poulos* and *Allen* are not mutually exclusive. Indeed, *Allen* stands for the proposition that the Commissioner can only use social security rulings as a replacement for a vocational expert when it is "crystal-clear that the SSR is probative as to the exact way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." Therefore, in cases such as Plaintiff's when it is not crystal-clear, *Poulos* must be followed and a vocational expert, or advance notice to the claimant, must be provided.